**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EDITH CLAYTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-39-JHP-SPS** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration, [1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Edith Clayton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 206). She has a high school equivalent education and has worked as a receptionist, dialysis technician, nurse aide, and light truck driver (Tr. 55, 240). The claimant alleges that she has been unable to work since an amended onset date of August 20, 2015, due to depression, high blood pressure, and tremors in her head and neck (Tr. 38, 239).

### Procedural History

In October 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 206-14). Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 27, 2016 (Tr. 19-28). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform light work as defined in 20 C.F.R. § 404.1567(b), except she could understand, remember, and carry out simple instructions and tasks with routine supervision; could relate to coworkers and supervisors only on a superficial work basis;

and could have no work-related contact with the general public (Tr. 23). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national economy, *i. e.*, housekeeper/cleaner, bottling line attendant, and small products assembler (Tr. 27-28).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for her crying spells when forming the RFC, and (ii) evaluate the opinion of treating physician Dr. Tayyaba Ali. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of major depressive disorder, anxiety disorder, and essential hypertension, but that her cholecystitis/cholelithiasis was nonsevere (Tr. 21-22). The relevant medical evidence related to the claimant's mental impairments reveals that Dr. Brian Allee treated the claimant for depression and anxiety in August 2014 and December 2015 (Tr. 340-41, 438-39). In August 2014, the claimant reported that she was significantly worried about her husband's health and had taken antidepressant medication in the past that was very effective (Tr. 340). Dr. Allee noted the claimant was alert, pleasant, cooperative, and appropriate, but a "little bit emotional at times" (Tr. 340). In December 2015, the claimant reported increased anxiety and depression following the death of her husband, an emergency surgery, and a break-in at her home earlier in the year (Tr. 438). Dr. Allee noted the claimant was tearful, but cooperative and appropriate (Tr. 438).

Dr. Kathleen Ward conducted a consultative mental status examination of the claimant on December 3, 2015 (Tr. 420-24).  Dr. Ward noted the claimant's mood appeared somewhat dysthymic, that she burst into tears discussing her husband, and that most of her timelines involved his death (Tr. 422).  Dr. Ward administered the Montreal Cognitive Assessment ("MOCA") and indicated that the claimant's score fell below average limits, but that her impairments appeared fairly mild spread across all domains (Tr. 423).  Dr. Ward diagnosed the claimant with major depressive disorder, recurrent and bereavement (Tr. 423).

The claimant established care at Mental Health Services of Southern Oklahoma ("MHSSO") in April 2016 and reported that her antidepressant medication was not effective and that she had been "crying a lot" (Tr. 448-51).  At this initial appointment, Dr. Mrunal Parab noted the claimant had a dysphoric mood, but normal affect, judgment, and thought, and that she cried when she talked about her husband's death (Tr. 448, 451).  Dr. Parab diagnosed the claimant with major depressive disorder, recurrent, moderate (r/o complicated grief); unspecified psychosis (r/o posttraumatic stress disorder from childhood, husband's loss); and unspecified anxiety disorder (Tr. 449).  Thereafter, various providers at MHSSO, including Dr. Tayyaba Ali, managed the claimant's medications through at least August 2016 (Tr. 444-47, 462-74).  The claimant generally reported improvement, and by August 2016 her crying spells had decreased, she felt better than before, her anxiety was "under control," and Dr. Ali noted her mood was normal and that her affect was constricted (Tr. 444-47, 462-74).

On October 24, 2016, Dr. Ali completed a Psychiatric Review Technique ("PRT") form wherein she opined that the claimant had a depressive syndrome evidenced by appetite disturbance with change in weight, sleep disturbance, and difficulty concentrating or thinking, as well as an anxiety disorder (Tr. 489-94).

State agency psychologist Burnard Pearce, Ph.D. completed a Mental RFC Assessment on March 23, 2016, and found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions (Tr. 101-02). He also found the claimant was moderately limited in her ability to maintain attention and concentration for extended periods and to interact appropriately with the general public (Tr. 102). Dr. Pearce concluded that the claimant could understand, remember, and carry out simple instructions with routine supervision; relate to supervision and a limited number of coworkers on a superficial work basis; adapt to a work environment; and had moderate limitations in relating to the general public (Tr. 102).

As to her mental impairments, the claimant testified that depression and anxiety affected her sleep, concentration, vision, appetite, and energy level (Tr. 43). The claimant also indicated that she cried frequently (Tr. 43). In response to questioning about what increased her depression or anxiety, the claimant replied that she thought about her husband every day (Tr. 45). The claimant further testified that being around people made her angry, raised her blood pressure, and caused her to yell (Tr. 47). She stated that she relieves her depression and anxiety by lying down "where it's dark," and that she did so two or three times per day for an hour each time (Tr. 51).

In his written opinion, the ALJ summarized the claimant's testimony, the medical records, and the Third Party Function Report completed by the claimant's sister. The ALJ gave significant weight to Dr. Ward's opinion that the claimant's mental impairments were mild across all domains, finding her opinion was consistent internally and with the claimant's later mental health treatment, which he stated also showed mild impairment (Tr. 25). The ALJ summarized Dr. Ali's treatment notes and found they indicated improvement in the claimant's symptoms, but he did not mention or discuss her October 2016 PRT form (Tr. 25-26).

The claimant first contends that the ALJ failed to consider her crying spells and resulting limitations when forming the RFC. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in this regard. It is well established that an ALJ must consider the effects of all the claimant's impairments, whether severe or nonsevere, when assessing the RFC. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). However, the ALJ is required to include only those limitations that are supported by the record in the RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In this case, there are several instances in the record where the claimant was described as "emotional" or "tearful" during examinations (Tr. 340, 422, 433, 438). The claimant suggests that these observations, along with her own subjective statements, establish that she is limited by her crying spells, and as such, the ALJ should have included a limitation in the RFC for being off-task. "[T]he mere presence of [a condition] is not necessarily disabling. Rather, [a condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Coleman v.*

*Chater*, 58 F.3d 577, 579 (10th Cir. 1995) [internal citations omitted]. Because no medical source indicated that the claimant's crying spells necessitated functional limitations, and because the ALJ determined that the claimant's subjective statements were not entirely consistent with the medical and other evidence, a finding that she does not separately challenge, the ALJ did not err by failing to include limitations for being off-task in the RFC. *See Kirkpatrick v. Colvin,* 663 F. App'x 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record."); *Arles v. Astrue,* 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting claimant's assertion that a limitation should have been included in the RFC because "such a limitation has no support in the record").

The claimant further contends that the ALJ failed to properly weigh or consider Dr. Ali's October 2016 opinion. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Mays v. Colvin,* 739 F.3d 569, 578 (10th Cir. 2014) (quoting *Keyes-Zachary v. Astrue*, 689 F.3d 1156, 1161 (10th Cir. 2012). However, the need for express analysis is weakened "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Id.* (quoting *Keyes-Zachary*, 695 F.3d at 1162). Additionally, an ALJ's failure to weigh a medical opinion is harmless error if the opinion is "not inconsistent" with the RFC. *Id.* At 578-79 (citing *Keyes-Zachary,* 695 F.3d at 1162-63). Here, the claimant correctly points out that the ALJ did not explicitly discuss the weight he assigned to Dr. Ali's opinion, but does not point to any specific limitations Dr. Ali assessed that the ALJ did not adopt. Dr. Ali opined only that the claimant's diagnoses included a depressive

disorder and an anxiety disorder, which the ALJ identified as severe and subsequently accounted for in the RFC. Thus, Dr. Ali's opinion is consistent with the ALJ's RFC, and the ALJ's failure to expressly state that he adopted her opinion constitutes harmless error.

Lastly, the claimant contends that the ALJ should have recontacted Dr. Ali for clarification. Although the ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e.g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), that is not the case here. If the ALJ had doubts as to any of the evidence, he *could have* recontacted Dr. Ali to clear it up, *see* 20 C.F.R. § 404.1520b(b) ("[I]f after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your medical source."), but he was under no obligation to do so, as the claimant implies. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that

the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**